UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

PERRY D. SCOTT,

      Plaintiff,

      v.                                                  Case No. 04-C-0373

H&R BLOCK MORTGAGE
CORPORATION,

      Defendant.

**DECISION AND ORDER RE: DEFENDANT'S MOTION FOR ATTORNEY'S FEES PURSUANT TO 42 U.S.C. § 2000e-5(k) AND DEFENDANT'S MOTION FOR ATTORNEY'S FEES PURSUANT TO FED. R. CIV. P. 11**

**I. BACKGROUND**

This action was commenced on April 13, 2004, when the plaintiff, Perry D. Scott, ("Scott") filed a complaint in the United States District Court for the Eastern District of Wisconsin alleging that he was discriminated against on the basis of his race, in violation of Title VII of the Civil Rights Act of 1964. Scott further alleged that he was treated differently than other like employees who are not of a protected class, in violation of 42 U.S.C. § 1981. Specifically, plaintiff alleged that the defendant terminated him because he is an African American.

On December 27, 2005, the court granted the defendant's motion for summary judgment. The court dismissed the plaintiff's racial discrimination claims under 42 U.S.C. § 2000 *et seq.* ("Title VII") and under 42 U.S.C. § 1981.

On January 10, 2006, defendant H&R Block Mortgage Corporation ("H&R Block") filed a motion for recovery of attorney's fees pursuant to 42 U.S.C.§ 2000e-5(k) as well as a motion for

recovery of attorney's fees pursuant to Fed. R. Civ. P. 11.  Currently pending before the court are these motions for attorney's fees, which are now fully briefed and ready for resolution.  For the reasons which follow, the defendant's motions for attorney's fees will be denied.

The history of this case is well summarized in the court's December 27, 2005 Decision and Order on the Defendant's Motion for Summary Judgment ("Decision and Order").  Consequently, the court will only engage in a limited discussion of the facts relevant to this decision.

## II.  ANALYSIS

H&R Block contends that it is entitled to recovery of attorney's fees pursuant to either 42 U.S.C. § 2000e-5(k) ("Section 706(k)") or Fed. R. Civ. P. 11 ("Rule 11") because the plaintiff filed and continued to advocate a frivolous, unreasonable, and unfounded race discrimination claim before the court.  (Mot. for Atty's Fees Pursuant to 42 U.S.C. § 2000e-5(k) at 2.)  Because H&R Block has made essentially the same arguments in support of both motions, the court will address the parties' arguments in support of and in response to both motions together.  Of course, to the extent the legal standards under Section 706(k) and Rule 11 differ (and they do, albeit slightly), H&R Block's Section 706(k) motion and Rule 11 motion will be evaluated under different legal standards.

The defendant makes several arguments to support its recovery of attorney's fees.  First, the defendant argues that plaintiff's counsel failed to conduct an appropriate investigation prior to filing the suit.  (Mem. of Law in Support of Mot. for Atty's Fees Pursuant to Fed. R. Civ. P. 11 ("Def.'s Br.) at 9.)  Second, the defendant argues that plaintiff's counsel continued to advocate plaintiff's claim after a reasonable investigation would have revealed that plaintiff's claim had "no evidentiary support."  (Def.'s Br. at 9.)  Third, the defendant argues that plaintiff's counsel continued to advocate plaintiff's claim despite the claim being "clearly foreclosed by binding Seventh Circuit precedent."

2

Case 2:04-cv-00373-WEC   Filed 02/22/06   Page 2 of 15   Document 64

(Def.'s Br. at 12.) Lastly, the defendant argues that, in order to effectively deter future plaintiffs from filing and continuing to advocate "unfounded" lawsuits, it should be granted its requested attorney's fees. (Def.'s Br. at 14.)

In response, the plaintiff offers legal support for the proposition that the standard for recovering attorney's fees under Section 706(k) is a "stringent" one and that dismissal on summary judgment alone is not a sufficient justification for granting attorney's fees. (Pl.'s Br. at 10,14.) The plaintiff also provides factual arguments in response to the defendant's motion for attorney's fees. First, the plaintiff argues that he had sufficient evidence under the "direct" method of proof to justify proceeding to summary judgment on his discrimination claim. (Pl.'s Br. at 19-20.) The plaintiff's argument is based on Weber's alleged racial slur, "the paucity of interactions between Hodgden and the plaintiff, the lack of negative work performance evaluations in the plaintiff's file, the near-midnight discovery of Hodgden's e-mail announcing for the first time with specificity the 'reasons' for the plaintiff's termination," and the inference that Hodgden was aware of Weber's alleged racial slur when he decided to terminated the plaintiff. (Pl.'s Br. at 19.) Second, the plaintiff alleges that, even under the "indirect" method, the plaintiff had sufficient evidence to proceed to the summary judgment stage on his discrimination claim. (Pl.'s Br. at 12-13.) Lastly, the plaintiff argues that, based upon the aforementioned evidence, the plaintiff had a reasonable ground for commencing and continuing to proceed on his race discrimination claim. (Pl.'s Br. at 27.)

*A. Recovery of Attorney's Fees under Section 706(k)*

Section 706(k) states, in pertinent part, "[i]n any action or proceeding under this title [42 U.S.C. § 2000 *et. seq.*], the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee as part of the costs." 42 U.S.C. § 2000e-5(k). Although the statutory language simply

3

uses the phrase "prevailing party," prevailing defendants and prevailing plaintiffs are not given the same standard for recovery of attorney's fees. *Coates v. Bechtel*, 811 F.2d 1045, 1050 (7th Cir. 1987). The Supreme Court has held that in order for a prevailing defendant to recover attorney's fees, the court must find that "the plaintiff's action was frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith." *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 421 (1978).

In both *Christiansburg* and *Hughes v. Rowe*, 449 U.S. 5 (1980),[1] the Supreme Court cautioned courts not to award attorney's fees to a defendant simply because that party prevailed. In *Hughes*, the Court also held that "the fact that plaintiff may ultimately lose his case is not itself a sufficient justification for the assessment of fees." *Id.* at 14. The Court went on to explain:

> As the court noted in *Christiansburg*, even if the law or the facts are somewhat questionable or unfavorable at the outset of litigation, a party may have an entirely reasonable ground for bringing suit.
>
> . . . Even those allegations that were properly dismissed for failure to state a claim deserved and received the careful consideration of both the District Court and the Court of Appeals. Allegations that, upon careful examination, prove legally insufficient to require a trial are not, for that reason alone, "groundless" or "without foundation" as required by *Christiansburg*.

*Id.* at 15-16 (citations omitted). In *Christiansburg*, the Court discouraged district courts from engaging in "*post hoc* reasoning" because "[t]his kind of hindsight logic could discourage all but the most airtight claims, for seldom can a prospective plaintiff be sure of ultimate success." 434 U.S. at 421-22. Stated differently, "[t]here is a significant difference between making a weak argument with little chance of success . . . and making a frivolous argument with no chance of success . . . [I]t

---

[1] In *Hughes*, the Court held that the standard for awarding a prevailing defendant attorney's fees under §1988 is the same as the standard under Section 706(k). 449 U.S. at 14-15.

4

is only the latter that permits defendants to recover attorney's fees." *Khan v. Gallitano*, 180 F.3d 829, 837 (7th Cir. 1999).

The Seventh Circuit Court of Appeals has elaborated on the "frivolous, unreasonable, or without foundation" standard articulated by the Supreme Court. In *Munson v. Milwaukee Bd. of Sch. Dirs.*, 969 F.2d 266, 269 (7th Cir. 1992), the Seventh Circuit stated:

> Defendants are not required to show either subjective or objective bad faith on the part of the plaintiff in order to recover § 1988 attorneys' fees. *Hamer v. County of Lake*, 819 F.2d 1362, 1366 (7th Cir. 1987) (citation omitted). Instead, the defendant must demonstrate that the plaintiff's action is "meritless in the sense that it is groundless or without foundation." *Hughes*, 449 U.S. at 14, 101 S.Ct. at 178. "[W]hen a civil rights suit is lacking in *any* legal or factual basis . . ., an award of fees to the defendant is clearly appropriate to deter frivolous filings and to ensure that the ability of the courts to remedy civil rights violations is not restricted by dockets crowded with baseless litigation." *Coates v. Bechel*, 811 F.2d 1045, 1050 (7th Cir. 1987) (citation omitted).

*Id.* (emphasis added). Furthermore, the Seventh Circuit has found a suit to be frivolous "'if it has no reasonable basis, whether in fact or in law.'" *Roger Whitmore's Auto. Servs., Inc. v. Lake County, Ill.*, 424 F.3d 659, 675 (7th Cir. 2005) (quoting *Tarkowski v. County of Lake*, 775 F.2d 173, 176 (7th Cir. 1985)). Simply put, "a district court may in its discretion award attorney's fees to a prevailing defendant in a Title VII case upon a finding that the plaintiff's action was frivolous, unreasonable, or without foundation . . . or that the plaintiff continued to litigate after it clearly became so. *Eichman v. Linden & Sons, Inc.*, 752 F.2d 1246, 1248 (7th Cir. 1985).

The Seventh Circuit has articulated a standard for district courts to use in the granting of attorney's fees under § 1988, and thus, under Section 706(k) as well. "[T]he district court must 'discuss the specific information that formed the basis for the plaintiff's suit, and . . . explain why this information did not constitute adequate factual substance for the commencement of a

5

nonfrivolous civil rights case.'" *Coates*, 811 F.2d at 1051 (quoting *Hermes v. Hein*, 742 F.2d 350, 357 (7th Cir. 1984)). Thus, the inquiry before this court is not whether the plaintiff's claims against H&R Block ultimately proved to be unsuccessful (which they did) but rather, whether "based upon the information available to the plaintiff[] at the time [he] initiated [the] lawsuit, the claim was frivolous, groundless, or unreasonable." *Id.*

Finally, the plaintiff's action may meet the standard for having attorney's fees awarded against him even if it is not frivolous, unreasonable, or without foundation at the start of the action. If the plaintiff continues to litigate after it is clear that the action lacks factual substance, a judge may award attorney's fees. *Hughes*, 449 U.S. at 15; *see also Munson*, 969 F.2d at 269.

In addressing the question of the defendant's entitlement to an award of attorney's fees, the court will discuss the evidence presented under the two methods used to prove intentional discrimination.

*1. The Direct Method of Proof of Discrimination*

To prevail on a discrimination claim under Title VII or § 1981, a plaintiff must establish that he is the victim of intentional discrimination. *See Jackson v. E.J. Branch Corp.*, 176 F.3d 971, 982 (7th Cir. 1999). A plaintiff can establish discrimination at the summary judgment stage using either the direct or the indirect method of proof. *Oest v. Ill. Dep't of Corrs.*, 240 F.3d 605, 611-12 (7th Cir. 2001). A plaintiff proceeding under the "direct method may rely on two types of evidence: direct evidence or circumstantial evidence." *Rudin v. Lincoln Land Cmty. Coll.*, 420 F.3d 712, 720 (7th Cir. 2005). "Direct evidence is evidence which, if believed by the trier of fact, will prove the particular fact in question without reliance upon inference or presumption." *Eiland v. Trinity Hosp.*, 150 F.3d 747, 751 (7th Cir. 1998) (internal quotations omitted). A plaintiff may also prevail under

6

the direct method by establishing a "convincing mosaic" of circumstantial evidence that "allows a jury to *infer* intentional discrimination by the decision-maker." *Rogers v. City of Chicago*, 320 F.3d 748, 753 (7th Cir. 2003) (emphasis added). Circumstantial evidence "may come in the form of 'suspicious timing, ambiguous statements oral or written, [or] behavior toward or comments directed at other employees in the protected group.'" *Dandy v. United Parcel Serv., Inc.*, 388 F.3d 263, 272 (7th Cir. 2004) (quoting *Troupe v. May Dept. Stores Co.*, 20 F.3d 734, 736 (7th Cir. 1994)). Rarely, if ever, will a plaintiff be able to produce direct evidence of discrimination, that is, essentially an admission that the plaintiff was demoted/terminated because of his race.

Thus, not surprisingly, the plaintiff's evidence under the "direct" method consisted primarily of an alleged racial slur made by Weber, Scott's boss at the time the alleged racial slur was made, as well as other circumstantial evidence. In its Decision and Order, the court summarized Scott's evidence under the "direct" method as follows,

> Scott has presented evidence that on March 13, 2003, after Scott disciplined Eugena T. Perkins for insubordination, Weber berated Scott, threatened his job, and told him to "take his black ass home." After this conversation with Weber, Scott went home and called his regional manager, Sam Hussein, and reported the incident to Hussein. That same afternoon Weber dictated a memo to Karen Baraga, a Senior Human Resources Generalist, outlining Weber's concerns with Scott's operation of the Milwaukee branch office. The next morning, on March 14, 2003, Weber e-mailed the memo to Scott. . . .
>
> Scott has also presented evidence that on May 28th or 29th of 2003, while Hodgden was visiting the Milwaukee Branch Office, Hodgden told Scott "that he's not Jim Weber" and that "what happened between you and Jim Weber is not my concern . . . We'll start from this point on." Additionally, there is evidence that, on July 28, 2003, Scott was told that he was being demoted/terminated for "various reasons . . . it's not a good fit. We need to move in the right direction." Approximately a week later, Hodgden allegedly told Scott that he was fired for "production reasons." Scott also relies upon the fact that Hodgden's alleged "summary of action items" e-mail and Hodgden's alleged follow-up e-mails were not attached to H&R Block's December 8, 2003 response to Scott's EEOC claim, as

7

> support for his "mosaic" of circumstantial evidence. As support for his "mosaic,"
> Scott also relies upon the fact that Scott's employment file contains "no negative
> reviews, no negative e-mails, no concerns with production, no evidence of customer
> complaints, and no reprimands." Finally, Scott has also produced evidence that he
> was replaced by a white woman.

Dec. & Order, December 27, 2005, at 21-22 (citations omitted).

The defendant argued that even if Weber's statement was evidence of racial animus, Hodgden was the sole decision-maker when it came to the demotion/termination decision, not Weber. (Def.'s Reply Br. at 2.) The defendant also argued that, even if Weber was the decision-maker, or more accurately, was someone who could have influenced the decision-maker, where the facts illustrate that an isolated derogatory comment was made two months before a termination, that passage of time removes any possible inference of discriminatory intent. *Markel v. Bd. of Regents of the Univ. of Wis. Sys.*, 276 F.3d 906, 910 (7th Cir. 2002).

In response, the plaintiff argued that Weber's discriminatory remarks were made by someone who could have "influence[d] the decision-maker" and therefore, a reasonable jury could infer intentional discrimination from the slur as well as the rest of the "mosaic" presented. *See Dandy*, 388 F.3d at 272. Although this argument was not sufficiently persuasive to prevent the entry of summary judgment against Scott with respect to his effort to prove discrimination under the "direct" method, it was nevertheless an argument grounded in law and in fact.

Thus, I am satisfied that the plaintiff had an adequate factual basis, namely the alleged racial slur, as well as the peculiar circumstances surrounding the timing of the production of the "nine reasons" list (and the production of the e-mail to which that list was allegedly attached), to file his race discrimination claim and proceed to the summary judgment stage on his claim. To be sure, this evidence was not, in this court's opinion, strong enough to survive a motion for summary judgment,

8

but this court can not say, based upon the circumstantial evidence presented, that the plaintiff's claim and his continued advocacy of his claim, was "frivolous, unreasonable, or without foundation." *Christiansburg Garment* Co., 434 U.S. at 421.

*2. The Indirect Method of Proving Discrimination*

Even if the plaintiff could not establish a "convincing mosaic" of circumstantial evidence that would allow a jury to infer that H&R Block discriminated against him, he was still entitled to attempt to prove discrimination indirectly under burden shifting method established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). In order to establish a claim of racial discrimination under Title VII or § 1981 using the indirect method of proof, a plaintiff must first establish a prima facie case by showing: (1) he is a member of a protected class; (2) he was meeting his employer's legitimate performance expectations; (3) he suffered an adverse employment action; and (4) he was treated less favorably than similarly situated individuals who are not members of a protected class. *Ineichen v. Ameritech*, 410 F.3d 956, 959 (7th Cir. 2005).

Even though the plaintiff ultimately lost with respect to his effort to prove his case by way of the indirect method of proof, I am satisfied that he did have sufficient evidence to warrant his proceeding to summary judgment via that method of proof. It was undisputed that the plaintiff was a member of a protected class. It was also undisputed that the plaintiff suffered an adverse employment action, that is, his demotion/termination. In addition, though it was weak, the plaintiff did produce some evidence on the other two elements.

Although the plaintiff was not able to survive summary judgment, the plaintiff produced sufficient evidence on the "legitimate expectations" prong to justify litigating the issue. The defendants relied upon its "nine reasons list" as evidence that at the time Scott was

9

demoted/terminated he was not meeting his employer's "legitimate performance expectations." But, Scott presented evidence that he was indeed meeting his employer's legitimate performance expectations. First, the plaintiff produced evidence showing that his employment file is devoid of any negative reviews, negative e-mails, any documents outlining concerns with production, or documents showing that customer complaints were lodged against Scott. (Pl.'s Br. in Resp. to Def.'s Mot. for Summ. J. ("Pl.'s Br.") at 12.) Second, Scott presented evidence that a few months before he was demoted/terminated he received a congratulatory e-mail from his then boss, Weber, congratulating the entire office on a great quarter. (Pl.'s Br. at 6.) Lastly, while the report showing the quarterly profits from July 2003 was not run until after Scott was demoted/terminated, Scott argued that because the Milwaukee office was the only new office that showed a profit for that quarter he was meeting his employer's legitimate performance expectations. (Pl.'s Br. at 24.) The court did not address the evidence produced under this prong of the *McDonnell Douglas* test in its Decision and Order because it found the fourth prong dispositive. However, the court can say that the plaintiff's argument that he was meeting his employer's legitimate performance expectations was grounded in law and fact and therefore, was not frivolous, unreasonable, or unfounded.

The plaintiff also produced some evidence on the fourth element, i.e., that the employer treated similarly situated persons outside the protected class more favorably. The plaintiff presented evidence that Team Leaders in other branch offices had the same supervisor, Hodgden, and were subject to the same standards, as Team Leaders of "new" branch offices. Dec. & Order, at 25. The plaintiff also presented evidence that his branch office was the only new branch office to have a profit during July of 2003. (Pl.'s Br. at 24.) Again, this evidence may not have been strong enough to survive a motion for summary judgment, but this court can not say, in light of the evidence

10

presented under both methods of proof, that the plaintiff's claim and his continued advocacy of his claim to the summary judgment stage was "frivolous, unreasonable, or without foundation." *Christianburg Garment Co.*, 434 U.S. at 421.

Finally, the defendant argues that because the plaintiff was not able to provide, at his deposition, first-hand knowledge that he was "similarly situated" with the other Team Leaders of new branches in "all material respects" he should have subsequently abandoned his claim. However, that Scott was not able to offer any evidence affirmatively establishing that he was similarly situated to the other Team Leaders in all "material aspects" at his deposition, does not make his continued advocacy of his claim unreasonable or frivolous. First-hand knowledge of whether the other Team Leaders engaged in conduct that is substantially similar to the conduct in which the plaintiff allegedly engaged is not necessary to establish the "similarly situated" prong. Indeed, plaintiff would most likely not be privy to information regarding the alleged misconduct of other Team Leaders in other states. Rather, a plaintiff's attorney would most likely have to pursue different avenues of discovery to find such information, if any exists. Thus, the defendant's argument that the plaintiff should have abandoned his claim after he made "numerous fatal admissions" at his deposition is not persuasive.

The bottom line is that the plaintiff's discrimination claim was, at its heart, based on circumstantial evidence. However, if this court were to find that more circumstantial evidence than was presented in this case is necessary to avoid an award of attorney's fees in a discrimination case that ultimately proves to be unsuccessful, surely only a handful of federal court actions alleging discrimination would ever be filed. In other words, only "airtight claims" would ever be pursued. This is exactly what the Supreme Court in *Christiansburg* said it did *not* want to happen. 434 U.S. at 421-22 (emphasis added).

11

Furthermore, although Scott's arguments were ultimately rejected, the facts of this case were not completely one-sided, and they did require more than a cursory review.  Indeed, the length and depth of the analysis set forth in this court's Decision and Order indicates that deciding the issues presented in this case required careful review.  To be sure, the evidence offered in support of Scott's claim was not sufficient to survive summary judgment.  But, when the issues presented by a plaintiff's claim require such careful review, it could hardly be said with any degree of credibility that the plaintiff's claim was frivolous, unreasonable, or unfounded.  *See Roger Whitmore's Auto. Servs., Inc.*, 424 F.3d at 675-76 ("True, it was ultimately revealed that [the plaintiff's] evidence established that his case was weak at best--so weak, in fact, that no triable issues of fact could be discerned and the defendants were entitled to summary judgment in the entirety . . . [b]ut a weak case does not a frivolous case make.").

### B.  Rule 11 Sanctions

Rule 11 provides, among other things, that when an attorney presents a pleading or written motion to the court, that attorney:

> is certifying that, to the best of that person's knowledge, information and belief, formed after an inquiry reasonable under the circumstances . . .
> (2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;
> (3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery[.]

Fed. R. Civ. P. 11(b).  Rule 11(c) provides that, if, after notice and a reasonable opportunity to respond, a court determines that Rule 11(b) has been violated, the court may, subject to certain conditions, impose an appropriate sanction upon the attorneys who violated Rule 11(b). Fed. R. Civ.

P. 11(c). The central purpose of Rule 11 is to deter abusive litigation practices. *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393 (1990). "Rule 11 imposes a duty on attorneys to certify that they have conducted a reasonable inquiry and have determined that any papers filed with the court are well grounded in fact, [and are] legally tenable." *Id.*

> Rule 11 creates duties to one's adversary and to the legal system, just as tort law creates duties to one's client. The duty to one's adversary is to avoid needless legal costs and delay. The duty to the legal system (that is, to litigants in other cases) is to avoid clogging the courts with paper that wastes judicial time and thus defers the disposition of other cases or, by leaving judges less time to resolve each case, increases the rate of error. Rule 11 allows judges to husband their scarce energy for the claims of litigants with serious disputes needing resolution.

*Mars Steel Corp. v. Cont'l Bank N.A.*, 880 F.2d 928, 932 (7th Cir. 1989). However, the fact that the underlying claim turned out to be groundless does not necessarily mean that Rule 11 sanctions are appropriate (much less required). *Beverly Gravel, Inc. v. DiDomenico*, 908 F.2d 223, 227 (7th Cir. 1990). Rather, "[w]hether counsel did an appropriate amount of pre-filing investigation, . . . whether a legal position is far enough off the mark to be 'frivolous,' [and] [w]hether the lawyer 'went too far' ('or didn't do enough')" are fact-intensive questions, and inevitably a judgment call. *Mars Steel Corp.*, 880 F.2d at 933.

To reiterate, the plaintiff's discrimination claim was, at its heart, based on circumstantial evidence. The evidence was not, in this court's opinion, strong enough to survive a motion for summary judgment. However, in light of the evidence presented by the plaintiff, I am satisfied that plaintiff's counsel did conduct the inquiry required by Rule 11 and has taken a position throughout this litigation that is reasonable in light of the facts and governing law. *See Gottlieb v. Westin Hotel Co.*, 990 F.2d 323, 327 (7th Cir.1993) ("Where Counsel's inquiry was objectively reasonable under

13

the circumstances of the case . . . Rule 11 sanctions are inappropriate."). Therefore, the plaintiff has not violated Rule 11 and no sanctions will be imposed.

The defendant argues that this case is similar to *Divane v. Krull Elec. Co., Inc.*, 200 F.3d 1020 (7th Cir. 1999), *Munson v. Milwaukee Brd. of Sch. Dirs.*, 969 F.2d 266 (7th Cir. 1992), and *Fernandez v. Galen Hosp. Ill., Inc.*, 1997 WL 675042 (N.D. Ill. 1997). These cases, however, are easily distinguishable. For example, in *Divane*, 200 F.3d at 1028, the district court found that the counterclaim "never had *any* factual support," and in *Munson*, 969 F.2d at 270, the district court found that the plaintiff "offered *no* factual basis to support his allegation." (emphasis added). The same can not be said about the factual support provided by the plaintiff in this case. Simply put, the plaintiff did present factual support for his claim, albeit not enough to survive a motion for summary judgment. (*see supra* Part II.A for a summary of the circumstantial evidence presented by the plaintiff).

Moreover, in *Fernandez*, attorney's fees were awarded because (1) the plaintiff proceeded on an age discrimination claim even after he learned that his replacement was actually older than he was, rather than younger, and (2) plaintiff's remaining argument had been recently rejected by the Seventh Circuit. 1997 WL 675042 at *2. The same can not be said about the legal arguments made by the plaintiff in this case. Simply put, this court can not say that the plaintiff's "legal position [was] far enough off the mark to be [deemed] 'frivolous.'" *Mars Steel Corp.*, 880 F.2d at 933. Nor could it be said with any degree of credibility that the plaintiff's legal argument was a "frivolous argument for the extension, modification, or reversal of existing law," especially in light of the fact that the prima facie case is a judicially created doctrine, of a highly fact-specific nature. Furthermore, while this court, applying Seventh Circuit precedent, did not ultimately find plaintiff's legal

14

arguments persuasive enough to survive a motion for summary judgment, the Seventh Circuit, of course, may come to a different conclusion.[2]

The bottom line is that the court finds there was sufficient merit to the plaintiff's claim for the plaintiff to continue to advocate his claim to the summary judgment stage. To reiterate, the facts of this case were not completely one-sided, and they did require more than a cursory review. The length and depth of the analysis set forth in the court's Decision and Order indicates that deciding the issues presented in this case required careful review and the plaintiff's claims were given careful review by the court.

### III.  CONCLUSION

For the reasons stated above, the defendant's motion for attorney's fees under 42 U.S.C. § 2000e-5(k) and Fed. R. Civ. P. 11 will be denied. After reviewing the specific information that formed the basis of the plaintiff's claims, I find that the plaintiff had a sufficient factual basis to file his claim and to continue to advocate his claim to the summary judgment stage. Therefore, his lawsuit was not frivolous, unreasonable, or without foundation.

**NOW THEREFORE IT IS ORDERED** that the defendant's motion for recovery of attorney's fees pursuant to 42 U.S.C. § 2000e-5(k) and the defendant's motion for recovery of attorney's fees pursuant to Fed. R. Civ. P. 11 be and hereby are **DENIED**;

**SO ORDERED** this   22nd   day of February 2006, at Milwaukee, Wisconsin.

/s/ William E. Callahan, Jr.
WILLIAM E. CALLAHAN, JR.
United States Magistrate Judge

---

[2] The court notes that the plaintiff has filed a notice of appeal from its Decision and Order.
.

15